This is our third case of the morning. 414-066-1. In re. Estate Isringhausen. And for the appellant, Mr. Massen. Is that the right pronunciation? And for the appellate, Mr. Plummer and Ms. Lorton. And you're splitting your time. You may proceed. Thank you, Your Honor. My name is Steve Massen. I'm an attorney in Alton, Illinois. I have the privilege of representing Jane Isringhausen in this matter. This is the third time this case has been before this court. And I'd like to briefly mention the first two times. The first appeal was a Rule 23 order filed August 16, 2011, number 2011, ILAP 4th, 100811-U. And in that appeal, this court found that the antinuptial agreement entered into between Jane Isringhausen and her husband Floyd was enforceable and that her waiver of her right to dower was enforceable. The case then was remanded for purposes of evaluating what was meant by after acquired property in the antinuptial agreement. The second appeal was decided by this court on January 4, 2013, under the cause number 2013, ILAP 4th, 120367-U. And the determination of the court at that time was that Jane's claim against the estate had in fact been timely made. She was a known creditor, had not received actual notice of the passing of Floyd, and therefore the catch-all two-year statute of limitations applied to that. And this court overruled the trial court on that issue and said yes, in fact, her claim was timely filed and remanded it for further discovery. Since that time, there really has been no effective discovery. We've made various attempts to try to complete discovery. We've made attempts to amend our complaint and so forth, and all to no avail, basically because the trial judge has found, first of all, that the four corners of the agreement are the four corners and any parole evidence is inadmissible. And secondly, that our amended complaint does not relate back to when she filed her claim against the estate back on July 22, 2009, because it alleges facts that she knew of or should have been aware of at that time, and since she didn't raise them at that time, they were waived. We think the court erred on both grounds, and we think the court also has erred with regard to the scope of discovery with regard to this case at this point. This case is very similar to this. It comes from Jersey County, and if you're familiar with Jersey County, you know that there are three rivers that have their confluence there or nearby. The Illinois River empties into the Mississippi River, and then a few miles farther downstream, the Missouri River from the west enters into the Mississippi. What we keep running into problems here is the confluence of different laws. The laws that applies to the prenuptial agreements, the laws that applies to probate estates, and the laws that applies to the Code of Civil Procedure, which is what I'm most familiar with. That's mostly what I do is litigation. And it's where we have those conjunctions that we have difficulty. It shouldn't be a difficult case at this point. What we have at this point, we've gone through the Illinois River, the Missouri River, now we've got the Mississippi River going past St. Louis. It's a breach of contract case. The issues are, is parole evidence admissible? And the issue is, does the Code of Civil Procedure apply? And those are all covered pretty well by statute. First of all, and then the other issue has to do with were the allegations in our First Amendment complaint things that Jane should have been aware of when she filed her claim against the estate back in July 22, 2009? And they were not, and I think we can show you that pretty graphically by showing you the various documents in their chronological order. And this won't take very long, and I apologize. The issue is the prenuptial agreement that was entered into between Jane and Floyd before they got married in September 1981. Floyd's wife, Virginia, had passed away earlier that year and had left a will. Jane had gotten a divorce. She was the high school librarian at the Jersey Community High School. In fact, she was my wife's librarian when my wife was in high school there. She had been married to the football coach. They'd gotten divorced. She and Floyd met and decided to get married, and they entered into a prenuptial agreement that was prepared by his attorney. And then they proceeded to be married for 27 years until he passed away around the holidays of 2008, I think. They really didn't make much reference to the prenuptial agreement during that 27 years of marriage. But what we've got is a prenuptial agreement that's affected by a will that was left by Virginia before the prenuptial was entered into, and also by Floyd's will that he prepared in September 2007, 26 years later, which interpreted some of the provisions of the prenuptial agreement. And we think that, particularly with regard to this court's decision in 2011 that this prenuptial agreement was enforceable and that they were only discussing what the terms were and permitting parole evidence for a purpose of determining what ambiguous terms of the agreement were, we think that that should prevail now, too. What has happened, basically, is the estate initially said, no, this wasn't a modification of Floyd's will. This was interpretation of some ambiguous provisions of the prenuptial agreement. This court agreed. Now we're taking that position that the meaning of some of the language of the prenuptial agreement is ambiguous, and unfortunately now the estate and the beneficiaries and the trial judge are taking the opposite position. They're saying, no, you can't go beyond the four corners of the prenuptial agreement. What in our order says that that language is ambiguous? Well, in your first order, it's quite rife with it. Basically, in the second order, it remands the matter. We had challenged two things in the second order. One was, yes, it was timely filed, and two was the judge erred in denying our right to take certain discovery. And you found that it was premature to decide on discovery. But in the first opinion, or the first Rule 23 order, it's pretty well rife with language about saying it's ambiguous. That word doesn't even appear. Sure it does. And I apologize, Your Honor. First of all, on page two, paragraph six, it says, these farms were subject to Virginia's estate, which remained open at the time. Then it goes on, it talks about how they lived during their 27 years of marriage, and that the rents from the farm, both the farm, half of the farm that was owned outright by Floyd, which Jane makes no claim to, and also the income from the life estate, which he was left for Virginia, keep in mind that the children already had that half of the farm. He was only entitled to the life estate, and that would accrue as he lived. He was entitled to whatever the rents were and so forth, but it was something that could only accrue as he survived. And that's how she put her will. If he survives me, then he's entitled to a life estate. And our position is that that is part of the after-acquired property. And that's how they, in fact, performed their course of performance of this contract during at least the first 20-some years of their marriage. After that, it got a little bit crazy because of impact from the children, because of some purchase of a certificate of deposit by Floyd and so forth, without Jane's knowledge, that we think were violations of what was intended by after-acquired property. And she wound up, in effect, receiving a life estate in the farmhouse, which she gave up maybe four years ago. She had no business. She was in her 80s, living 15 miles from town in a farmhouse. So she voluntarily gave up her life estate and moved into town, bought a condominium in Jerseyville, which I'm pleased about. You were in the process of finding the word ambiguous. Let me look again at your first order, and I apologize, Your Honors. It talks about the fact that they had lived together and that the rents were received by the couples. It talks about, on page 12, paragraph 38, it says, Jane's argument also fails on the merits. And what we had said is that Floyd attempted to unilaterally change the prenuptial agreement, therefore it's not enforceable and she should get a right of dollar. This court rejected that. Here's what your language is, and I'll read it to you. Jane's argument also fails on the merits. First we adjust, Jane's contention, Floyd unilaterally modified the anti-nuptial agreement. Apart from the fact contracts cannot be unilaterally modified without the knowledge and consent of the remaining party. Paragraph 5 of the will does not assert a modification but an interpretation. Interpretation is put in italics there, Your Honor. The word ambiguous is not used anywhere. Okay, that's correct. And there's no reference to ambiguity, and you have to interpret all words. If you're interpreting a statute, that doesn't mean the statute's ambiguous, it means you derive meaning from the words in the statute. Okay, then if there is no ambiguity, then parole evidence is inadmissible, and then the language of Floyd's 2007 will would also be inadmissible, and that's not what this court found. This court found that it was admissible, and it's because there were terms in the agreement that were ambiguous. Otherwise it would be an attempt by him to unilaterally modify it, and the court said he's not doing that, he's trying to interpret it. And you can only interpret a contract, you can only go beyond the four corners of the contract if there's some ambiguity. And this court found that there was, and in fact Floyd found there was, because he attempted to interpret it in his 2007 will. Going on, page 39, I'm sorry, paragraph 39 of page 12 of your Rule 23 order. Even assuming Floyd's act in specifying his interpretation of after acquired property, 26 years after the antenational agreement was executed, makes the finding of concealment more probable. This fact, this act is far shorter proving actual concealment in 1981. Anyway, and then going on page 40, I'm sorry, paragraph 40. Third, Jane argues paragraph 5 is a modification because appellees have treated it as such. Jane maintains the estate began distributing assets based on Floyd's interpretation of the after acquired property. And then page 41, this is where the court is about to remand the case back to the state court, to the trial court, for further discovery. These matters are for the trial court to resolve when deciding Jane's claim against the estate. They are irrelevant to how paragraph 5 of the will and the antenational agreement should be interpreted. And this is the language. This question, the question of how to interpret after acquired property, is one for the trial court. This question does not affect the validity of the antenational agreement as it does not establish concealment or fraud. So our position is that it was sent back for the purpose of evaluating what is meant by, quote, after acquired property. And that very language is in paragraph 41 of your August 16, 2011, rule 23. Let me, if I may, very briefly, there's where we run into problems. And I can see how the appellate courts could run into problems with it, too. You know, an antenational agreement is a contract. It's not like a contract between Pepsi and Coca-Cola. It's a contract between a husband and a wife. It takes effect and it gains its flavor and its context only in the context of their marriage. So that's what we have here. We have an antenational agreement that's affected by the probate law. Both the probate law of Jane, I'm sorry, of Virginia, her will before they entered into the agreement, and 26 years later by the probate law of Floyd and his will as he's interpreting what he meant to say back in 1981. Then we have the question of, okay, and this was presented in so many words to the trial judge. Okay, let's say we've got probate law here and you file a probate claim. How in the heck do you turn this into a breach of contract case? And I was asked, I was given seven days by Judge Pistorius to investigate that. And luckily this is pretty straightforward. It's done by statute. The statute says, I'll read the entire statute to you. It's 755 ILCS 5 slash 1-2.05. What makes her claim against the estate into a breach of contract? And it says claim includes any cause of action. Okay. Then the next question is, how do you reconcile a claim with a cause of action? Because they're not the same thing and we recognize they're not the same thing. When Jane found out that they were trying to sell the house out from under her and not recognizing her life estate, that's all she knew. So we filed a lease penance with her quarters office to let anybody who bought that house know that she had a life estate. We filed a renunciation of the will and we filed a claim against the estate. But we didn't know the details and of course we didn't. Well, here's how the appellate courts and the Supreme Court have reconciled. How do you translate a probate case into a civil lawsuit? And it says, first of all, any claim is appropriate for bringing in a probate action. So if Floyd Isringhausen, before he passed away, he lent somebody $10,000 and that fellow lent him $10,000 and he owed it, then he would have to file his claim. Well, how do you do that? Because a breach of contract is one thing and there are standards for breach of contract, but there are also standards for bringing a probate claim. Here's what the court has said. Okay. First of all, they give half a loaf to each side. First of all, they say it doesn't matter what the nature of the claim is or what the statute of limitations is, how long it is. What applies is the statute of limitations that applies to a probate case. If it has to be filed within six months, you've blown it. If they haven't filed it within that six months, even if the statute for breach of contract is two years, you've blown it. Okay. So that's what they give to the probate side. What they give to the litigation side is, but we'll give you half a loaf, too. You're filing a claim against the estate, not a complaint. We're not going to hold you to the same technicalities that we would hold a civil lawyer if he was filing a breach of contract claim. He's filing a claim against the estate. As long as he subsequently amends the complaint to and it has met the statute of limitations, then even if it doesn't meet the, I know federal court requires fact pleading and state court notice pleading, those kinds of issues. I don't remember specifically. But we're not going to hold either side to those as long as the claim has been brought appropriately. And here there was. So it clearly was done. This court found that on the second appeal. Where we are now, your honors, is a breach of contract case. Okay. This case was remanded by this court in January 2013 for purpose of further discovery. Every time I tried to take a deposition, I was shut down. And the judge said, I'm sorry, after acquired property is a known issue. I can only look at the four corners of the agreement. We disagree with him, for one thing, because it's modified by Virginia's will beforehand. What is a life estate in income? When does that income accrue from her half of the farm? It can only accrue as he's alive. It can only be after acquired property. He doesn't own that property. The kids own it. That's after acquired property. And in fact, that was their course of conduct. That's how they lived. That's how they've been in life for that first 20-some years. We think we're entitled to go into that, your honors. The judge said, no, you're stuck. You can only ask about after acquired property, something other than the life estate that he got from Jane. Every time I tried to take depositions and go into that issue, for 20 years or so, Floyd farmed with two of his kids. And they kept all the income. Floyd and Jane did. The kids didn't claim the income of Floyd's. They just claimed it later. But I'm not permitted to get into that. So every time, I would get shut down. So I thought, well, I know there's a way I can get around this. And one thing the probate court says, another thing that reconciles probate case with a litigation case, is it says in any probate claim, the code of civil procedure applies. And that includes Section 2616, which is the one having to do with amendments. So I thought, these guys don't have a clue. They don't know what the heck I'm shooting at. So what I'll do is I'll file an amended complaint. And I did. And I asked for leave. And the court would not permit me to do that either. I think he eventually did. But ultimately, he said it was not timely and it didn't relate back because all the facts were known by Jane when she filed her original claim back in July 2009. And that's simply not the case. So first of all, the amended complaint should have been permitted. I was very meticulous in alleging the counts in that complaint. There's a breach of fiduciary duty on the part of Floyd and a breach of contract. There's a breach of fiduciary duty on the part of the executives of the estate. There's an allegation of undue influence on the part of the children. There's an allegation of tortious interference with contractual relationship on the part of the children. And there's an allegation of intentional infliction of emotional distress. And Judge Pistorius said, no, I'm sorry. You should have been aware of all that stuff back when you filed your claim in July 2009. We can't. She couldn't, Your Honor. For one thing, she's not very litigious. But for another thing, here's the chronology. Here's Virginia's will from early 1981. Here's the prenuptial agreement from September 1981. Here's Floyd's. Then we have 27 years of marriage, commingling property, doing all that stuff, dealing with his life estate as if it's part of both of their property. Then we have his will, which admittedly modifies it. Then we have what triggered her filing of her claims against the estate, which are the listing in her local shopper of her house, which she had a life estate in, as if it's being sold in fee simple. That's what prompted her to contact me. Then we filed our lease pendants. We filed our renunciation of the will, and we filed our claim against the estate, all on July 22, 2009, as soon as she came to me. Then we get some of the stuff that constitutes breaches of contracts and tortious interference with a contractual relationship and intentional infliction of emotional distress. It's only later. It's only later. We get, for example, this letter from Bruce Isinghausen to Butch Whitman, who's the attorney for the estate, saying, Butch Whitman, you might want to tell Mr. Roger Isinghausen, who is the executor of the estate. He's the oldest son. He also took his request early because he ran into financial problems on his farm. But he was made the executor of the estate by his father. You might want to tell Mr. Roger Isinghausen, and to whom it may concern, that for every action there is a reaction. Thank you. We also have, we also have, I filed the interruption. I hear from you on revoke. I'm sorry. Your time has expired. Thank you very much. I apologize. May it please the Court, Counsel. Your Honors, my name is Allison Lorton. I'm from the law firm of Whitman & Lorton in Jerseyville. I represent the estate of Floyd Isinghausen by its executors, Clayton and Roger Isinghausen. To put this case as concisely as possible, the trial court dismissal of the first amended complaint should be affirmed by this court for two reasons. The antinuptial property agreement, as well as the limitations period. Mr. Mawson's gone into a great deal of argument about ambiguity. However, as this court pointed out, the word ambiguous is not indicated at one point in your first order from August of 2011. Well, counsel indicates that it must have been a finding of ambiguity because this court wouldn't have mentioned the 2007 will. Because otherwise the court couldn't consider parole evidence unless there was an ambiguity. How do you respond? I would look at the language in the order. I think what the court was directing was whether or not the provision for after acquired marital property as set forth in the prenup is in fact ambiguous. It's not a question for the appellate court at that time, but it's a question for the trial court. If the court determines this provision for after acquired marital property, which is the essence, which is her claim in and of itself, one paragraph for her portion of after acquired marital property, if the trial court finds there's issues here based on the will or whatever, then that would be a finding of ambiguity and we'd be able to go down this road that counsel so desperately wants to go down talking about the will, outside matters, parole evidence, conduct of the parties. But the trial court did not find ambiguity. Several months upon remand, after the appellate court's first opinion, in February of 2012, the estate filed an objection to various discovery requests of Jane, seeking information about what Floyd did during his lifetime with the money generated from the farm, what sort of incomes were made. We objected as irrelevant. This is not concerning property acquired after the marriage. The judge reviewed the provision of the anti-nuptial agreement. The hearing is in the record on appeal. And he found, and I quote, the language to be incredibly clear. After acquired marital property, only included property acquired after the marriage of Floyd and Jane. Did not include his farm ground, the income derived from his farm ground. We've already been down and had the argument that the prenup is valid. Floyd did the prenup to protect his farm land and allow him to transfer during his life and at his death his interest in that land to his children. And the trial court ruled, this provision is incredibly clear to Judge Pistorius, it does not include the land or the income generated from that land as after acquired marital property. That was in 2012. Your Honor, to address the second aspect of your question, the interpretation that was referenced in Floyd's will talks about the treatment of after acquired marital property. As to the cattle and equipment involving his farming operations, whether or not the trial court, or whether or not there may be an issue as to whether or not replacement property of items involving his farming operation would be considered after acquired marital property. And Floyd in his 2007 will tried to address that. If the court felt that cattle and equipment, replacement cattle and equipment, should be subject to that provision, he made alternate provisions for her. There's no question, there's no ambiguity, no admission of ambiguity, as counsel argues in his brief, that Floyd thought that that provision concerning his farm ground, his land, which he reserved the right to give to his children during his life and his death, was ambiguous. Jane repeatedly argues that this discovery must be conducted so she can determine the conduct of the parties. The discovery in which counsel wishes to take is of adult children of Floyd's first marriage who had no personal knowledge of the inner workings of the finances or of the marriage between their father and Jane Isringhausen. And ironically, the best evidence of how that income was treated during the course of the marriage is already in the record presented before this appellate court. Jane's deposition testimony was taken one month prior to the filing of the first amended complaint. And during that deposition, Jane testified that the farm income was held in a separate bank account in Floyd's name alone for 25 years of their marriage. She did not make deposits into that account. She did not make withdrawals into that account. Her name was only added less than two years prior to her passing. Jane testified during her deposition that they maintained a separate bank account at an entirely different bank that was used to cover their joint living expenses. However, these facts, as they are already contained in the record, are not producing the facts that counsel needs to support his position. Insisting continuously demands on taking depositions of adult children who had no personal knowledge of the inner workings between this relationship. The court granted our motion to dismiss the first amended complaint on two separate grounds, 2615 as well as the 2619 timeliness or statute of limitations. In our brief and as our motions before the record, we believe that the first amended complaint fails as a matter of law for failure to state a cause of action. The initial claim from 2009 references a claim pursuant to a contract, the Antinatural Property Agreement, for Jane's one half of after-acquired marital property. Counsel just argued this is a breach of contract claim. We find ourselves running in circles. She's entitled to one half of the after-acquired marital property. The trial court has held that that does not include his farm ground, that does not include that farm income. What counsel has filed in an eight count complaint naming for the first time six new individuals, not one of those count is entitled breach of contract. We've got torts, we have misrepresentation, we have undue influence, all seeking to set aside that which she's already validly waived, which has been upheld by this court in the prenuptial agreement. Each and every prayer for relief of all eight of those counts, filed at the court to review, asks this trial court to set aside the transfers of real estate from Floyd during his lifetime to his children. The exact thing that he reserved in his prenup the right to do during his life and at his death. Each and every prayer for relief, whether it's undue influence or tortious interference, asks the court for the same relief to undo what the valid prenup expressly provided that Floyd could do with his farm ground and the income generated thereby. Additionally, 2619, the estate moved that the antenuptial agreement serves as an affirmative matter to bar relief as a matter of law to defeat the claim to set aside transfers of Floyd's farm ground, and as well as we raised various statute limitations as the first amended complaint filed five years after Floyd's death as untimely. Counsel references the relationship between the probate code or the code of civil procedure. Either code you want to rely upon, it's both untimely. Probate code, two years to file a claim. This was five years after Floyd's death when he files this first amended complaint with eight new causes of action against six new individual defendants named for the first time. Counsel relies heavily on the relation back doctrine. The relation back doctrine is intended to afford parties the right to take advantage of defects in form, such as an improper statement on the claim not intended to permit amendments after the running of the statute of limitations. In my opinion, your honors, it's clear. We have a claim for after-acquired marital property that has now morphed into a 23-page complaint seeking the exact same property that she validly waived at the signing of that agreement. Prior to January 2014, the children of Floyd, their involvement in the litigation was voluntary and subject to what they may or may not have known between the dealings of their father and Jane Isringhausen. At no point was anyone put on notice that they should be called to account for their actions in terms of undue influence, breach of fiduciary duty, fraud, tortious interference. These are all theories that have come to light for the first time five years after the complaint was filed. And furthermore, as the trial court judge reiterated, what the First Amendment complaint is seeking to do is set aside what Floyd did with his farm ground and the income thereby, based on these new theories. All of the action that Floyd did was during his lifetime, was known to Jane. Even the often cited and repeated trying to sell the house out from under her, which has already been established in the record and in depositions, was a mistake in the publication. The house was never sold out from under her. Jane continued to have a life safe for as long as she wanted to do so. The estate even paid for all the maintenance and the real estate taxes on the property as provided for in Floyd's will. All of the facts, whatever counsels brought into the courtroom today, all of these matters, everything was known in 2009, in July of 2009 when she filed that first complaint. There's absolutely no reason such actions, based on I want this farm ground, could not have been done in that time. Your Honor, may it please the court, I'd like to offer counsel on behalf of the beneficiaries of the state, unless you have further questions for me. No questions, thank you. Thank you, Your Honor. Good morning. May it please the court, Your Honor, counsel, I am Lee Plummer. I am an attorney representing four of the children, being Bruce Hinsringhausen, Judy, Susan, and Gary. I'm just very briefly going to add a couple of comments in addition to what Allison Lorden just said. I would point to 735 section 52-616. When you read that in subsection D, when it talks about adding parties after the statute of limitations is run, it specifically talks about where there are mistakes concerning identity of the parties. Well, certainly there was no mistake here. Jane Hinsringhausen, of course, knew who the children were, knew all of these things that had occurred, and as Allison Lorden has pointed out, all of the complaints, the prayer in each complaint, asked to set aside intravenous transfers that were done by Floyd during his lifetime. Floyd departed this life in December of 2008. These are things that were known before his death. Obviously, intravenous transfers were more than five years from this first minute complaint was filed. So we feel it should be dismissed. Secondly, throughout these proceedings, the appellant has made various allegations regarding things that happened. I believe an example in the depositions he talked about and criticized the children for failure to see the prenuptial agreement prior to Floyd's passing. Well, they're only going to see it if they had wanted them to see it. And there's nothing wrong with them not having been aware of it prior to passing. There are allegations about a document at a church door. There's allegations regarding a sign. First off, I think all of those things are totally irrelevant at this point in time. But secondly, there's no basis or no indication that any of the children play a role in any of those things. The other thing that I would just simply add deals with discovery. The appellant keeps talking about not being allowed to do discovery. We were doing a deposition of one of my clients. That deposition was stopped by Mr. Masson, was not stopped by us. There were objections to various questions. I think he asked like ten times one of my clients if they were familiar with the terms of their mother's will and ten times said no. It was just ongoing, for lack of a better term, really harassment. At one point he told one of my clients, can you read and write? So we didn't stop the depositions, he did. There were two more scheduled that day and he chose not to take those depositions. So that's all I have to add unless your honors have any questions. No, thank you. Okay, thank you.  Thank you, counsel. Just very briefly, it seems like this is the old adage that best defense is a good offense. The problem is what we have is a breach of contract case. It's clear. Whether it's ambiguous or not, it's a breach of contract case. And the code of civil procedure applies whether it's brought as a probate claim or as a civil case. What's a discovery deposition for? You can ask anything that is discoverable or might lead to discoverable information. It's not an issue of what's material or what's relevant. It's a matter of what's discoverable. I was shut down every time. Every time. And I tried to do this. That's what led me to file the amended complaint so they could know what I was going for. And I was entitled to do that. The other thing is they're saying I somehow was intimidating these witnesses when I asked them questions. I'm sorry, that's the pot calling the kettle black. We've already talked about the undated letter of Bruce's ring. I was clearly intended to intimidate Roger and intimidate whoever else might concern him. I filed interrogatories and requests to produce to each of the children who were parties to the case from the get-go, from as early as 2009, on November 11, 2009. What happened to those interrogatories? Somebody stuck them in the door of the Field and United Church of Christ, which is Jane's church, and stuck them into the Peace Church in Jerseyville, intending that they be used, hey, look at what she's doing. I'm not sure exactly what the intention was. Then Jane, I think in late 2011, at my recommendation, I said, you have no business living out on that farmhouse. Move into town. And she did. And then shortly thereafter, I believe it was Roger, the executive of the estate, who found this sign on her mailbox. On her mailbox. Boy, I'm sorry, Jane. Boy, we would be so proud of you, signed the neighbors. Well, Roger, I believe, went around to each of the neighbors, did any of you have anything to do with that sign? And they all said no. But I'm not permitted to ask any of that in the discovery depositions of these witnesses. You know, this is, I've alleged, Jersey County is subject to the laws of the state of Illinois. There's a procedure for handling litigation. There's also procedures for not handling litigation. You don't intimidate witnesses. You don't interfere with contractual relationships. You don't commit conscious, intentional interference with emotional distress, infliction of emotional distress. That's what they did. I didn't do this. They did it. They did it. They did it as late as after Jane moved into Jerseyville in late 2011, which is two and a half years after we filed our original claim against the estate. And keep in mind, the filing of the amended complaint, this case has been up on appeal far longer than it's been in front of the court in Jerseyville. So we've had limited opportunities to do much here. We were shut down as soon as we started taking depositions after the second remand. And that's improper, Your Honors. This is very clearly an ambiguous agreement. The life estate information that Jane received and that they received is after acquired property. We think the court should find that, but at least the court should permit us to conduct discovery on that. Thank you, Your Honors. Thank you, Counsel. We'll recess until readiness of the next case.